**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

ALLAN A. KUEHNEMUND,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

CASE NO. 07-CV-15174
             04-CR-20025

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Dkt. 74)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

Pending, pursuant to an Order of Reference from United States District Judge David Lawson (Dkt. 76),[1] is the above-entitled motion filed under 28 U.S.C. § 2255 to vacate Petitioner's federal custodial sentence. Pursuant to orders extending the time to file a response (Dkt. 83, 94), the Respondent filed a response on July 31, 2006, and Petitioner replied. (Dkt. 95, 98.) I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is now ready for Report and Recommendation without oral argument.

---

[1]The case was reassigned to Magistrate Judge Mike Hluchaniuk (Dkt. 77), but later reassigned to myself. (Dkt. 84.)

B.  **Procedural History**

Petitioner directly appealed his judgment and sentence (Dkt. 48), and the Sixth Circuit affirmed his conviction and sentence on December 6, 2006. (Dkt. 72.) On December 6, 2007, the instant motion to vacate sentence under § 2255 was filed.

The substantive facts were reported in the Sixth Circuit opinion as follows:

> A federal grand jury in the Eastern District of Michigan indicted Kuehnemund on April 14, 2004. On July 14, 2004, the government filed a superseding indictment, which alleged that Kuehnemund had made false statements to various reinsurers working on behalf of the United States Department of Agriculture's Federal Crop Insurance Corporation. More specifically, the false statements concerned the amount of potatoes Kuehnemund produced between 1994 and 1997, and were embodied in fraudulent documents including invoices, shipping orders, and billing statements. The superseding indictment alleged that inflating the records of his potato production during that period enabled Kuehnemund to make it appear that his 'baseline' crop was substantial, so that his 'losses' in subsequent years were greater than they actually were. Ultimately, this fraud permitted him to recover amounts from the federal crop insurance program significantly greater than the amounts to which he was entitled.
>
> The superseding indictment charged Kuehnemund with five counts of violating the False Claims Act, 18 U.S.C. § 287; six counts of making false statements to influence the Federal Crop Insurance Corporation, in violation of 18 U.S.C. § 1014; one count of making and using false documents to support false insurance claims, in violation of 18 U.S.C. § 1001; and four counts of mail fraud, in violation of 18 U.S.C. § 1341. Each count included a citation to 18 U.S.C. § 2, which prohibits aiding and abetting an offense.
>
> The case went to trial. After the prosecution's case closed, Kuehnemund unsuccessfully moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to the four mail-fraud counts (Counts 5, 7, 8, and 13) and one of the false claims counts (Count 16). Kuehnemund put on his defense, and at the end of the trial, a jury convicted him on all counts. On June 15, 2005, the district court sentenced Kuehnemund to concurrent sentences of 87 months for the § 1014 counts and 60 months for the remaining counts. Kuehnemund now appeals his conviction on three of the mail-fraud counts (Counts 5, 7, and 13), and on one count of making a false claim (Count 16).

*U.S. v. Kuehnemund*, 208 Fed. App'x 371, 372-73 (6th Cir. 2006). The Sixth Circuit held that sufficient evidence supported the jury's verdict on each count. *Id.* In addition, the court held that

2

the challenged jury instructions regarding "reckless indifference" and "deliberate ignorance" were not confusing or misleading in light of the instructions as a whole. *Id.* at 375-76. Accordingly, Petitioner's conviction was affirmed.

## C. Governing Law

### 1. 28 U.S.C. § 2255

In order to prevail on a § 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A § 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation. *See Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

### 2. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the

proceeding is unreliable. *Id.* It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process. In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (quotations and citations omitted).

### D. Petitioner's Claims of Ineffective Assistance and Trial Counsel's Responses

Petitioner focuses on the difference between events as he recalls them and what he refers to as the "fabricated testimony of my former associate Richard Nixon."[2] (Dkt. 74, Kuehnemund

---

[2]This individual is no relation to the deceased former President of the United States.

Aff. in Supp. of Pet. ¶ 29.) Petitioner also lists the specific action that he had hoped his trial counsel would take. (*Id*. ¶ 30.) Petitioner's trial counsel has prepared an affidavit that addresses each of Petitioner's contentions in turn. (Reynolds Aff., Dkt. 95 at Ex. A.) For ease of reference, each of the grounds Petitioner lists supporting his claim of ineffective assistance[3] will be followed by his trial counsel's explanation.

> a. Ascertain if a 'tacit' agreement had been made between Nixon and the government which would be brought to the attention of the jury and thus, in great likelihood, impeach Nixon's testimony and substantially affect his credibility and likely have resulted in a far different outcome.

(Dkt. 74, Kuehnemund Aff. ¶ 30(a) (emphasis in original).) Trial counsel indicates that he was aware of no evidence that any such agreement existed. (Reynolds Aff. ¶ 30(a).)

> b. Demonstrate, via cross examination, that Nixon's direct testimony was fabricated, false, and concocted to fit a fictitious set of facts designed to wrongly support the counts of the indictment against me.

(Kuehnemund Aff. ¶ 30(b).) Trial counsel indicates that he thoroughly cross-examined Mr. Nixon. (Reynolds Aff. ¶ 30(b).)

> c. Investigate the highly questionable preparation and filing of certain Uniform Commercial Code liens and lien releases by Nixon.

(Kuehnemund Aff. ¶ 30(c).) Counsel states that the "U.C.C. liens prepared by Mr. Nixon, whether questionable or not, were not major issues. The problem was Mr. Kuehnemund had in his possession a U.C.C. release form with the scotched taped signature of Mr. Nixon . . . [which] according to trial testimony, was faxed and the lien subsequently released . . . [the signature] was matched to other signatures and documents found in Mr. Kuehnemund's possession . . . [and] the

---

[3] I will retain Petitioner's categorization of these claims as claim "a" through claim "i."

cut out signature matched the cut out from the page from which it was taken." (Reynolds Aff. ¶ 30(c).)

    d.    Object to the blatantly false statements in the closing statement of the prosecuting attorney, to wit:

        i.    That I planed [sic] and sold potatoes from 1994 to 1997. (There was not testimony to this effect.)

        ii.    That I had sales records from vendors. (There was <u>no</u> testimony to this effect.)

        iii.    That there was no break-in at my office prior to the office being raided and searched in furtherance of the offenses alleged against me. (The prosecutor knew that a break-in had taken place and been reported.) See interview by Agent Dodson of deputy sheriff as part of Exhibit D.

(Kuehnemund Aff. ¶ 30(d) (emphasis in original).) Trial counsel stated that he did not object because "there was nothing legally objectionable." (Reynolds Aff. ¶ 30(d).)

    e.    Prove that the main supplier of fertilizer to the farming operations that I conducted between 1998 and 2001 was indicted for selling doctored and diluted products to customers, including me. This information, known to attorney Reynolds, surely would have provided the jury with adequate questions to raise doubt in their minds as to my intent to commit any crime, the cause of the crop failures and whether, in fact any illegal conduct was carried out by me.

(Kuehnemund Aff. ¶ 30(e).) Trial counsel indicated that he "did not find the fertilizer supplier issue relevant to the base claims of false APH's [sic] created to set insurance rates for future crops when, in fact, the entire issue of the case was there were no potatoes grown on any plots . . . ." (Reynolds Aff. ¶ 30(e).)

    f.    Enter into evidence a police report and other material related to a break-in at my office that occurred March 8, 2001. A crucial, damming, [sic] piece of evidence was discovered in my office <u>after</u> the break-in; yet the jury never learned via a valid police report that a break-in had occurred and they were thus unable to draw the inference (undeniably important to my defense) that Richard Nixon

6

> needed or at least perceived the need, to plant incriminating evidence in my office. This is not far-fetched or paranoid, a reasonable person, hearing all the available evidence could easily conclude that Mr. Nixon - fearing disclosure of his own misdeed of providing false crop information to me - actually planted incriminating evidence in my office.

(Kuehnemund Aff. ¶ 30(f) (emphasis in original).) Trial counsel responded that testimony of the break-in was elicited from Mr. Kuehnemund and his insurance agent. (Reynolds Aff. ¶ 30(f).)

> g. Object to the highly prejudicial 'big screen' display mounted in the courtroom (and edited by the prosecution as describing 'fraud') during the closing arguments of my attorney and the prosecutor. Similarly, since the dollar amounts shown on the display were substantial, I expected Reynolds to enter into evidence my tax returns for the relevant years to show the significant expenses associated with the funds received as insurance payments. Instead, Mr. Reynolds failed to introduce the tax returns, allowing the jury to infer (incorrectly) that the sums received were not disbursed for farm expense, but, in effect, 'pocketed' by me.

(Kuehnemund Aff. ¶ 30(g).) Counsel indicated that the "big screen" display was a "screen with an elmo that was utilized by both the government and the defense in preparation of their respective cases" and was not objectionable to the defense. (Reynolds Aff. ¶ 30(g).) Counsel also stated that Petitioner's tax returns were not relevant to the claims against him which were "based upon inflated and incorrect APH's [sic], which were deemed fraudulent." (*Id.*)

> h. Failed to utilize witnesses willing to testify as part of the defense case and thereby cast serious doubt upon Mr. Nixon's testimony. For reasons that remain a mystery to me and for which I believe no adequate explanation exists (aside from incompetence), Reynolds failed to call as witnesses most of the individuals I suggested to him via a list containing several of the suggested witnesses, see Exhibit C.

(Kuehnemund Aff. ¶ 30(h).) Counsel indicates that he "specifically discussed" which witnesses were to be called with Petitioner and that Petitioner did not disagree with his decision not to call

certain witnesses who may have had information about other questionable insurance claims made by Petitioner. (Reynolds Aff. ¶ 30(h).)

> i. Bases [sic] on the *Booker* decision on the United States Supreme Court, I believe my counsel should have objected to the terms of my sentence so as to afford me to [sic] the opportunity to avail myself of the argument on appeal that Booker and subsequent cases could be construed as barring the sentencing court from enhancing a sentence calculation on matters <u>not</u> found beyond a reasonable doubt by a jury of my peers.

(Kuehnemund Aff. ¶ 30(i).) Petitioner does not indicate what "matters" he contends were not covered by the jury verdict. Trial counsel states that no *Booker* issue exists since the jury made all relevant findings of guilt beyond a reasonable doubt. (Reynolds Aff. ¶ 30(i).)

Petitioner also attached and cited affidavits of potential witnesses whose testimony would have been favorable to him, i.e., his brother Kenneth Kuehnemund; a former federal crop insurance adjuster, Wayne Schoof; Justin Nixon, nephew of Richard Nixon; Robert Brinkman, current crop adjuster; and Jared Kuehnemund, Petitioner's son. (Dkt. 74 ¶ 31.) Petitioner contends that these affidavits reveal that "the testimony of Richard Nixon was riddled with falsehoods." (Dkt. 74 ¶ 32.) Trial counsel responds that Mr. Nixon was impeached, citing the trial transcript, and states that the other witnesses would have been cumulative. (Reynolds Aff. ¶¶ 32-37.)

### E. Analysis and Conclusions

#### 1. Petitioner's "Tacit Agreement" Claim

Respondent denies that any such agreement existed and notes that such an agreement, "tacit" or express, would have necessitated disclosure under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). (Dkt. 95 at 7 n.5.) Trial counsel indicates that he was aware of no evidence that any such agreement existed. (Reynolds Aff. ¶¶ 5-7.) In addition, Respondent notes that Petitioner did not raise this issue in his direct appeal, and therefore, since he has not

argued or shown cause and prejudice for his failure to raise the issue directly, he cannot raise the issue in this § 2255 petition. (Dkt. 95 at 7 n.5 (citing *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993)).

I suggest that Petitioner has not shown any evidence of a "tacit agreement" between Mr. Nixon and the government, nor has he sufficiently alleged cause or prejudice for failing to raise the issue on direct appeal. I further suggest that even if a "tacit agreement" existed, it would not amount to a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process" that would call for habeas relief. *Gall,* 21 F.3d at 109.

2.     **Petitioner's Remaining Claims**

The remaining assertions address trial strategy decisions for which counsel has provided sound explanations. Court scrutiny of tactical decisions must be "highly deferential" and any decision that "might be considered sound trial strategy" does not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 694; *Michel v. Louisiana*, 350 U.S. 91, 76 S. Ct. 158, 100 L. Ed. 2d 83 (1955). Petitioner's trial counsel has explained that: additional witness testimony would have been cumulative and that certain witnesses could have further harmed Petitioner's case and thus were not called to testify; he did not object to use of the "big screen" because he used this same item; fertilizer suppliers, income tax returns, and U.C.C. forms were not introduced into evidence because they were not relevant to the charge that production rates were inflated; Petitioner himself testified regarding the break-in that occurred at his office which would have allowed evidence to be planted[4]; and counsel thoroughly cross-examined Mr. Nixon. (Reynolds

---

[4] I have been unable to locate Petitioner's direct testimony in the transcripts provided in the record, although redirect and recross may be found at Dkt. 70, Vol. 8. Volume 7 contains only the testimony of Aileen Kubik and Robert Kullman. (Dkt. 69.) However, neither party contests the fact that Petitioner testified regarding the break-in

9

Aff.; *See also* Trial Tr. Vol. 4 at 2-49, 51-76.) Even where objectionable, the decision whether to interrupt a closing argument is a quintessential exercise in trial strategy and tactics and counsel maintains nothing objectionable occurred. (Reynolds Aff. ¶ 30(a).)

I suggest that trial counsel's conclusion that there was no cause to object to the government's closing argument is objectively reasonable in light of the trial record. (Dkt. 70, Trial Tr., Vol. 8 at 59-82.) I further suggest that none of these decisions, individually or in the collective, provide any indication that counsel's performance was in error or fell below an objective standard of reasonableness under *Strickland.* I therefore suggest that Petitioner has not shown that he was prejudiced by any of the alleged deficiencies to such an extent that the result of the proceeding is unreliable, that the result would have been favorably different but for counsel's alleged errors, or that any error occurred which rendered the proceeding fundamentally unfair or unreliable. *Id*. at 688, 693; *Lockhart*, 506 U.S. at 369. Consequently, I recommend that Petitioner's § 2255 motion be denied.[5]

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

---

(Dkt. 95, Ex. A, ¶ 30(f); Dkt. 98 at 28 ¶ f.) Petitioner simply contends that another witness should also have been called, Mr. Schoof. Where the parties concur, I do not believe further investigation or process is required.

[5] I note that in his reply brief, Petitioner added the words "Evidentiary hearing requested" to the caption. (Dkt. 98.) To the extent that he has requested a hearing by including this phrase in the caption of a reply, I suggest that there are no questions of fact necessitating an evidentiary hearing. Instead, I suggest that the claims may be properly and fully examined on the record before the Court.

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                   s/ *Charles E. Binder*
                                               CHARLES E. BINDER
Dated: September 9, 2008             United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Frank H. Reynolds, Janet L. Parker, and on Allan A. Kuehnemund by First Class mail, #26225-039, FCI McKean, P.O. Box 8000, Bradford, PA, 16701, and served on U.S. District Judge Lawson in the traditional manner.

Date: September 9, 2008       By     s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder